No. 32,461

In re The Board of County Commissioners of the County of Allen, *Appellee*, v. The Board of Education of the City of Iola, *Appellant,*

AND

In re Claim of The Board of Education of the City of Iola, *Appellant*, v. The Board of County Commissioners of the County of Allen, *Appellee*.

(51 P. 2d 973)

Opinion filed December 7, 1935.

*G. R. Gard* and *Stanley E. Toland,* both of Iola, for the appellant.

*J. C. Edwards,* county attorney, for the appellee; *Wallace H. Anderson* and *Guy M. Lamer,* both of Iola, of counsel.

The opinion of the court was delivered by

DAWSON, J.: These two cases, consolidated by the trial court, were based on certain claims of the litigants against each other, and which were quickened into litigation because of the cash-basis act of 1933.

On May 15, 1933, the board of county commissioners of Allen county filed with the board of education of Iola a claim for $16,-487.99 for moneys illegally disbursed by county treasurers to the board of education throughout a period of twelve years, 1920 to 1931, inclusive.

Not to be outdone, the board of education filed a claim against the county for $52,208.40, the most of which had scarcely a shadow of merit on which to predicate it.

Each of these official boards promptly rejected the claim of the other, and both appealed to the district court, where, by order of court, accountants were employed to examine the pertinent records for the period from 1920 to 1934 and to audit the accounts between the parties.

Following this accounting, the litigants filed bills of particulars amplifying their claims. The trial court sustained the county's

claim against the board of education in the sum of $15,516.99, and likewise sustained the claim of the board of education against the county in the sum of $4,404.68. Setting the one claim against the other, the trial court gave judgment in favor of the county for the difference between these two sums—$11,501.51.

The board of education appeals. Before taking note of particular matters urged on our attention, we desire to make a general observation touching the inherent limitations of an appeal in an accounting case. An appellate court does not undertake the functions of an accountant or special auditor, nor does it recheck his work to discover possible inaccuracies in his figures or arithmetical processes. Trial courts may find it practical to scrutinize such details with particularity, or if they are too greatly pressed for time they may assign such tasks to a referee. (R. S. 60-2923.) The result of an accounting by auditors employed by order of court or with its sanction has substantially—although not technically—the same effect as the report of a referee. It needs only the approval of the court to become a conclusive finding of fact on which a judgment may be entered; and that judgment can only be overthrown on appeal by showing some plain and demonstrable error which inheres in the accounting.

In *Farmers State Bank v. Commercial State Bank*, 136 Kan. 447, 16 P. 2d 543, which was an action for an accounting of miscellaneous claims between two banks, this court said:

"Before concluding, however, we must say a final word of comment on the sort of an appeal presented here. From first to last the record and the argument have been interlarded with a myriad of items of account on the assumption that this court should take these up and deal with them separately. Not so, however. That was the function of the trial court, as is the case in any other action involving mere issues of fact. In *City of Oswego v. Condon*, 124 Kan. 823, 825, 262 Pac. 542, where a formidable record involving an accounting to establish an alleged shortage in a city treasurer's funds was submitted for our review, it was said:

" 'It is altogether beyond the functions of this court to make an independent accounting of the fiscal affairs of the city . . . to determine the status of the treasurer's accounts. It must suffice to say that no manifest or demonstrable error is disclosed in the findings and they will have to stand.' " (p. 454.)

Coming now to the particular specifications of error urged by the board of education, it is first contended that the county had no authority to withhold tax moneys collected by the county treasurer which were levied for the current expenses of operating the city

schools. But that is not a fair interpretation of the county's claim against the appellant nor of the trial court's judgment in this case. Of course the current levies to operate the schools cannot be diverted to the payment of the school board's stale debts; and if this judgment cannot be satisfied out of funds on hand without prejudice to the current fiscal needs of the schools, the board of education will need to refund this judgment indebtedness as the cash-basis law provides. (R. S. 1933 Supp. 10-1107; *Citizens Bank of Weir v. Cherokee Township,* 138 Kan. 282, 25 P. 2d 1019; *State, ex rel., v. Toy,* 138 Kan. 166, 23 P. 2d 601.) In *State, ex rel., v. Crawford Township,* 139 Kan. 553, 557, 32 P. 2d 809, it was said:

"The new cash-basis law (Laws 1933, ch. 319) provides for the issuance of bonds by the taxing district to make good an indebtedness to the county or other parties without disturbing funds levied and collected for another purpose. R. S. 72-1031 provides for levying a tax for the collection of a judgment that may have been obtained against a school district."

Appellant next argues that the county should be held liable to the board of education for the delinquent personal property taxes based on appellant's school-tax levies where the sheriff could have collected them if he had diligently performed his duty. This contention, if not actually frivolous, certainly has no substantial merit.

Another contention which only needs to be stated to be condemned is that personal taxes collected and embezzled by a deputy sheriff should be charged against the county as a justiciable claim in favor of the appellant.

The next two errors assigned relate to the trial court's refusal to permit the appellant to offer evidence about what an accounting between the litigants would show for the period between 1907 and 1919, inclusive. This complaint cannot be considered for two insurmountable reasons. The rejected offer of evidence was not followed by the production of such evidence in support of the motion for a new trial. (*State v. Ball,* 110 Kan. 428, 432, 433, 204 Pac. 701; *State, ex rel., v. Wright,* 140 Kan. 679, 684, 38 P. 2d 135.) Moreover, the record shows that the trial court took judicial cognizance that the litigants had agreed that the accounting period should only go back to the year 1920. The record reads:

"By THE COURT: Now stop right there. You just as well forget that allegation in your answer right now. We had an agreement in open court of the time covered by the claim you gentlemen were going to file.

[COUNSEL FOR APPELLANT]: "No, that isn't correct.

"By the Court: That is correct. It is exactly correct, and I don't want you to dispute me on it because that is the order, and I know what I made. Now if you gentlemen had journalized this as you should have done, this wouldn't have happened, and if you didn't journalize it, that is your fault; . . ."

It has been repeatedly held that the trial court's personal recollection of earlier proceedings in the *same case* has the potency of evidence. (*Christisen v. Bartlett,* 73 Kan. 401, 403, 84 Pac. 530; *State, ex rel., v. Lyons,* 106 Kan. 860, 862, 863, 189 Pac. 976; *Cazzell v. Cazzell,* 133 Kan. 766, 3 P. 2d 479; *Tawzer v. McAdam,* 134 Kan. 596, 601, 7 P. 2d 516.)

Appellant finally projects a contention that the trial court did not have power to enter judgment against it for a greater amount of tax moneys found to have been overpaid by the county in any one year than the item listed for that particular year in the verified claim of the county. It does not clearly appear that this was done, however. The county claimed $16,487.99. The court sustained that claim in the sum of $15,906.19, and this sum was arrived at by the method agreed upon by the litigants—by the employment of competent accountants to ascertain the exact status of the accounts of the litigants for the agreed period of twelve years. No demonstrable error is made to appear under this assignment.

The other objections to the judgment have been duly considered, but they do not raise the slightest doubt as to the justice of the trial court's disposition of them, nor would they justify further discussion.

The judgment is affirmed.