No. 33,170

MEYER SANITARY MILK COMPANY, *Appellee*, v. THE CASUALTY RECIPROCAL EXCHANGE, *Appellant*.

(66 P. 2d 619)

502

Opinion filed April 10, 1937.

*David F. Carson* and *Blake, A. Williamson,* both of Kansas City, for the appellant.

*J. E. McFadden* and *O. Q. Claflin,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: The action was brought by the plaintiff, the Meyer Sanitary Milk Company, upon an insurance policy issued by the defendant to indemnify the plaintiff against liability for damages on account of bodily injury accidentally suffered by any person or persons not in the employ of plaintiff. Judgment was entered for the plaintiff, and defendant appeals.

The insurance policy provided that "this contract does not cover loss or expense for injuries to or caused by (1) any person employed by the subscriber contrary to law or ordinance, or any child employed under sixteen years of age, where there is no legal restriction upon the age of employment."

In January, 1931, while said policy was in force, one Jack Edward Lee, a minor under sixteen years of age, while riding on one of the milk wagons of the plaintiff, was seriously injured when the wagon was struck by a streetcar. Thereafter, Jack Edward Lee, by his next friend, brought suit against the plaintiff herein and the streetcar company and recovered judgment against said defendants for fifteen thousand dollars. Upon appeal to this court the judgment was affirmed against this plaintiff, the Meyer Sanitary Milk Company, on the ground Lee was not an employee but an invitee of the milk company, and was reversed as to the streetcar company. (See *Lee v. Kansas City Public Service Co.,* 137 Kan. 759, 22 P. 2d 942.) Motion for rehearing was filed in this court and that motion was overruled. Execution was issued and the judgment was paid by this plaintiff. This suit is brought to recover the amount of judgment as covered by the policy, together with interest and costs.

In the suit by Lee against this plaintiff and the streetcar company, the defendant herein appeared and defended the action in the trial court, on the appeal in this court and on the motion for rehearing.

On the trial of this case the jury rendered a general verdict in favor of the plaintiff, and returned answers to special questions. Defendant filed a motion for judgment on the special questions, notwithstanding the general verdict, which was overruled. A motion by defendant to set aside the answers to certain special questions, and its motion for a new trial were also overruled. Judgment was given for plaintiff, from which this appeal is taken.

We are confronted with fourteen specifications of error, but as the errors claimed and urged in the brief of appellant are focused on certain pivotal questions it will not be necessary to consider separately the errors specified.

First, it is argued that "the trial court erred in its theory of the cause, and adopted a wrong theory of the case." It is asserted the trial court announced at the beginning of the trial that the only issue in the case was whether the boy, Lee, was employed by the plaintiff; that the court immediately departed from this theory and permitted testimony to show the employment of other boys, but only as a part of the general plan of the distribution of milk by the plaintiff; that this theory was wrong and was reflected in the instructions given by the court, and in the ruling on admission of testimony, to the prejudice of the defendant. In order to understand the merit of this contention it becomes necessary to consider the issues as developed by the pleadings and certain rulings of the court in progress of the trial. In defendant's answer it is alleged:

"This defendant further states that as part of its answer herein it refers to paragraph three of the general agreements set out in the contract sued on herein, and makes the same a part of this its answer as fully as if the same was set out herein at length, and states that the plaintiff violated said contract in this, to wit: that it employed a child under sixteen years of age out of which the claim it makes against this defendant arose, and for damages to whom the plaintiff claims this defendant is liable to it."

As the policy, as quoted above, did not cover the injury to any child under sixteen years of age who was in the employ of plaintiff, the issue under the terms of the policy and the answer of defendant seemed to be limited to the question of the employment of the boy, Lee. During the trial defendant undertook to show that other

boys were employed by plaintiff in the delivery of milk. When William Bannister was testifying as a witness for defendant he was asked to tell the jury whether or not there were other boys there, when the following colloquy between court and counsel occurred:

"Q. Now when you were there helping to load this milk and getting ready to deliver milk, tell the jury whether or not there were other boys there."

And then follows:

"[Attorney for plaintiff]: I object—wait a minute—I object to that as neither competent, relevant nor material, not binding upon the plaintiff in this case in any manner, unless it is a matter that is brought home to the knowledge of someone in authority, someone authorized to—unless shown the company had knowledge of it.

"[Attorney for defendant]: We cannot prove it all at once. We have to prove it by several witnesses; and of course your honor has power at all times to direct the jury what they shall or shall not consider; and we think it is competent as showing the fact that boys were working there; not what they did or anything like that; I am not interested in that.

"The Court: Well, the question in this case is, one question, whether or not this particular boy was employed; not whether one or all others were.

"[Attorney for defendant]: Well, but here, custom, custom and the presumption in law—we would like to be heard on this matter. There isn't any use going ahead with this whole mass of testimony without having an understanding before we start.

"The Court: I think that is correct.

"The Court: Now, after hearing the authorities submitted, I have come to the conclusion that this evidence may be admitted to show this: That it was the custom of the milk company to hire boys, or was not, as the case may be, as a part of the company's general plan for getting the milk to its customers; and the defendant may offer proof of this employment by the conduct of the parties, as a part of that general plan. That is the purpose that it will be admitted for; no other purpose. Now, of course, this evidence of other boys being on the wagons is not evidence of employment of Jack Edward Lee, and cannot be considered as such.

"[Attorney for defendant]: You will limit its application in your instructions to the jury.

"The Court: The fact of such employment must be proven by competent evidence; and this evidence will be admitted for the sole purpose of showing the general plan of the company for the distribution of its milk.

"[Attorney for defendant]: That is the purpose of it.

"The Court: And if Lee was a part of this plan, and the defendant can prove that Lee was a part of this general plan, then, of course, that evidence is admissible, but for no other purpose.

"[Attorney for defendant]: That is right.

"The Court: And upon objection, if it is introduced for any other purpose,

it will be excluded. That is the only purpose, and the jury will be instructed to that effect."

The contention of counsel for defendant is set forth in their brief as follows:

"The appellant had not contracted with the appellee in regard to any custom or manner of distributing its products, nor was the appellant obligated to show, in order to establish the employment of boys, that a custom of employment or a method of distribution of milk and the use of boys in that custom or the distribution of that milk, was the thing prohibited. All we had to do was to prove facts and circumstances from which a reasonable mind might believe that the appellee had employed boys on its wagons, whether it was by custom, by practice or pursuant to a general plan of handling its sales distribution, but to compel us to prove in order to establish the employment of boys, a part of a custom, practice or method of distributing milk products, was going outside of the contract and placing an undue burden upon the appellant, especially in view of the restrictions that were thereafter applied to the appellant in its effort to prove what the actual facts were. . . . That all that the testimony of other boys being employed, was offered for, was to bring home knowledge to the principal of the employment of this particular boy, in violation of the terms of this contract."

The policy does not state that the employment of boys under sixteen years of age shall *ipso facto* render the policy void, but that if a child under sixteen is employed by the plaintiff, the policy does not cover loss for injuries to or caused by such child. As the answer of the defendant above set out limited the issue to the employment of Jack Edward Lee, it would not seem that it could now complain when the court permitted testimony as to the employment of other boys as a part of the general plan of getting milk to its customers. Especially is this true when counsel approved the ground upon which the court allowed such testimony. Certainly defendant should not in this court assume an attitude inconsistent with that taken by him at the trial. (*Spaulding v. Dague,* 120 Kan. 510, 243 Pac. 1045; *Dewey v. Bobbitt,* 84 Kan. 663, 114 Pac. 865.) If there was error in the admission of this testimony, it was invited by defendant. It cannot now complain. (*Brown v. Oil Co.,* 114 Kan. 482, 218 Pac. 998; *Insurance Co. v. Heckman,* 64 Kan. 388, 67 Pac. 879; *Mercer v. McPherson,* 70 Kan. 617, 79 Pac. 118.)

Complaint is made of the exclusion of competent and material testimony offered by defendant. This testimony for the most part related to the employment of other boys by the Meyer Sanitary Milk Company. Defendant insisted that such testimony be admitted to show "custom" of the company. The court ruled such

testimony be admitted so far as it showed a general plan for the distribution of the milk. Just wherein lies the distinction between testimony to show a "custom" and testimony to show a "general plan" under the situation is not entirely clear. Testimony on either theory would effectually fasten knowledge on the employer. The issue under the answer was as to the employment of the boy, Lee, who was injured. If he was employed there was no coverage under the policy; if he was not employed there was coverage and liability. So, that testimony admitted on either theory was beyond the issue tendered in the pleadings, and could not be complained of by the defendant. Besides, it does not appear that the evidence excluded by the court was presented at the hearing on the motion for a new trial as required by the statute. (G. S. 1935, 60-3004.) This section provides, among other things, that "In all cases where the ground of the motion is error in the exclusion of evidence, want of fair opportunity to produce evidence, or newly discovered evidence, such evidence shall be produced at the hearing of the motion by affidavit, deposition or oral testimony of the witnesses, and the opposing party may rebut the same in like manner." The record fails to show any effort to observe the command of this statute, and we are therefore relieved of the necessity of making a more detailed examination of the evidence excluded. (*Cooper v. Greenleaf,* 84 Kan. 499, 114 Pac. 1086; *State v. Wellman,* 102 Kan. 503, 512, 170 Pac. 1052; *State v. Ball,* 110 Kan. 428, 204 Pac. 701; *Leach v. Urschel,* 112 Kan. 629, 212 Pac. 111; *Allen County Comm'rs v. Board of Education,* 142 Kan. 770, 51 P. 2d 973.)

In answer to special questions the jury found that the employment of boys under sixteen years of age was not a part of the general plan of the plaintiff in the distribution of its products; that Jack Edward Lee did not perform any services or do any work around the plant of the plaintiff. While the testimony was conflicting, yet as there was ample evidence to support these findings and as they are consistent with the general verdict, the findings are final and conclusive on this appeal, and, unless other error is found, compel an affirmance of the judgment.

It is claimed that the court erred in its refusal to submit the special questions requested by the defendant. We have examined these questions and compared them with the questions submitted by the court. The slight change in the penning of these questions could not possibly inure to the prejudice of the defendant. We think there is no merit in this point.

The next contention is that the court erred in its instructions to the jury, and in refusing to give instructions requested by defendant. The instructions given by the court fairly covered the case under the issues, and we think there was no error in the refusal of the requested instructions. (*Intfen v. Hutson,* 145 Kan. 389, 65 P. 2d 576.)

It is claimed that the court erred in rendering a judgment for $12,575.70 contrary to the verdict of the jury. The verdict was for the plaintiff for $10,000, plus interest and costs. The motion of the plaintiff for judgment calculated the interest from February 24, 1932, to February 11, 1936, at $2,378.33; costs at $119.30, and interest on costs at $18.07, making a total of $12,575.70 for which judgment was entered. As our attention is not directed to any specific error in these amounts, the judgment must be approved for the amount entered by the trial court.

Finding no error in the record, the judgment must be, and it is, affirmed.